[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Housing Authority of Norwalk brought this summary process action against Clara Elmore and her sons, Brian and Ryan, alleging serious nuisance in violation of Connecticut General Statute section 47a-11(g). Brian Elmore failed to appear. His mother, who was present at trial, and his brother Ryan, who was not present, were represented by counsel. The defendant brothers are twins who were born on June 4, 1971.
The court finds the following facts. On December 1, 1983 the plaintiff and the defendant Clara Elmore entered into a lease agreement. In that agreement Brian Elmore and Ryan Elmore, then CT Page 3383 both minors, were members of the defendant's household. The lease was renewed automatically for successive terms of one month following the expiration of its initial term. Each year Mrs. Elmore participated in a recertification process in which her income and family size were reviewed to determine whether or not the amount of rent and the apartment size need be increased or decreased.
On November 9, 1988 the defendant, Brian Elmore, then 17 years of age, was arrested on the plaintiff's premises for possession and sale of narcotics in violation of General Statute Sections 21a-277 (a) and 21a-279 (a). Brian gave his address as 506 Washington Village. The charges were dismissed when it was determined that the contents of the seized packets were "dummies".
On August 4, 1989 Brian was again arrested and this time was charged with possession of marijuana in violation of General Statute section 21a-279 (c). On April 26, 1990 Brian was arrested on Housing Authority property for possession and sale of marijuana in violation of sections 21a-277 (b) and 21a-279 (c). On both dates he gave his address as 105B Washington Village which is his mother's address and the premises for which he is listed in the lease. He entered a plea bargain on May 18, 1990 which disposed of the incidents in 1989 and 1990. Based on the arrests and convictions the Housing Authority brought the instant action.
Section 47a-11 (g) provides that a tenant shall "conduct himself and require other persons on the premises with his consent to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises or constitute a . . . serious nuisance, as defined in section 47a-15."
Section 47a-15 (D) defines "serious nuisance" as "using the premises for . . . the illegal sale of drugs."
The statute then continues as follows:
 "(I)f the landlord elects to evict based upon an allegation, pursuant to subsection (g) of section 47a-11, that the tenant failed to require other persons on the premises with his consent to conduct themselves in a manner that will not constitute a serious nuisance, and the tenant claims to have had no knowledge of such conduct, then, if the landlord establishes that the premises have been used for the illegal sale of drugs, the burden shall be on the tenant to show that he had no knowledge of the creation of the serious nuisance."
In 47a-1 (l) a tenant is defined as the "lessee, sublessee or person entitled under a rental agreement to occupy a dwelling unit to the exclusion of others or as is otherwise defined by law." CT Page 3384
Subsection (g) of that statute defines "premises" as ". . . a dwelling unit and the structure of which it is a part and facilities and appurtenances therein and grounds, areas and facilities held out for the use of tenants generally or whose use is promised to the tenant."
There is no dispute that all three defendants are tenants and that the arrests occurred on Housing Authority premises.
In support of its claim that Clara Elmore consented to her son's presence and knew of her son's activities the Deputy Director, Candace Mayer, testified that sometime between August 1989 and December 1989 she met with Mrs. Elmore. At the time of the meeting Ms. Mayer did not know of Brian's August arrest. However, based upon the arrest of November 1988 the Housing Authority had issued a notice to quit to Mrs. Elmore. It did not proceed to a summary process action because the charges were dismissed. At the 1989 meeting, Ms. Mayer indicated that if Brian were arrested again the plaintiff would seek to evict the entire family.
Clara Elmore's testimony provided evidence that she knew of her son's activities. At some point before the April 1990 arrest she "had (her) suspicions" but saw nothing to confirm them. She looked in "his drawers" and "stuff" to see if any evidence of drugs were present but found nothing. She cleaned his room every day. She would try to see him from her window and he would be "just sitting" or sometimes "standing around" in a large group. She admonished him "not to hang out over there." When Brian was charged with the second arrest she requested that the Probation Department assist in obtaining a court-ordered curfew for 12 midnight. That was obtained and he complied for a time. Mrs. Elmore did not indicate what, if any, steps she took when he ceased to comply.
Her recollection as to when Brian moved out was not clear. She claimed "a lot of things were happening" presumably between August 1989 and April 1990. However, Brian was never removed from the lease. The recertification form of July 1989 (Exh."J") before his arrest in August, lists Brian as a tenant. In an amendment to the lease dated September 5, 1989 (Exh."K") Mrs. Elmore signed the document but failed to list Brian as having been removed from the lease. The recertification form of December 1991 shows a notation "Moved Out" next to Brian's name and date of birth but there is no further information given.
Mrs. Elmore testified that after the August 1989 arrest Brian was "getting moved out" and that she took his clothes to his father's lodgings as he was "slow" in moving his things. Brian did not feel that his having to move out was "fair." She said that both her husband, from whom she is separated, and Brian knew she did not CT Page 3385 want to lose her housing. She also tried to get a separate apartment through the Housing Authority for Brian and Ryan. In light of her testimony as to the relationship of her sons, discussed below, it is unclear what she hoped to accomplish by this since it would have put Ryan at risk of losing his housing should Brian be convicted of selling drugs. She was uncertain on cross-examination as to whether or not Brian moved in 1989 or 1990.
In any case it would appear that Brian moved sometime in 1990. In paragraph 3 of his First Special Defense dated February 5, 1992 Ryan Elmore admits that "Clara Elmore had Brian Elmore move in with his father in 1990." An admission in a defendant's answer to an allegation in a complaint is binding as a judicial admission upon all defendants. United Electrical Contractors, Inc. v. Progress Builders, Inc. 26 Conn. App. 749, 753
At some point around June 1989, Mrs. Elmore first indicated to the plaintiff that she wanted Brian removed from the lease. She was informed that the procedure for removing an authorized occupant or tenant from the lease was to complete a Landlord Verification Form signed by the prospective landlord. She received at least two of these forms from the plaintiff's personnel but never returned them to the plaintiff. One reason for not returning them was the fact that, as she testified, Brian lived in "a lot of places" including at his girlfriend's. She did not furnish dates for any of these absences from her home and the court cannot find that they were considered permanent.
Another reason for not returning the forms resulted from the fact that she proposed Brian live with his father. George Elmore, Brian's father, resided at a rooming house on High Street until approximately June 1990 when he moved to a self-contained apartment on Lincoln St. Although separated from his wife, he remains in daily contact with her by telephone. Mr. Elmore' s testimony though well-meaning was not sufficient to overcome the plaintiff's evidence that Brian had not moved. He could not recall dates when Brian moved into his former lodgings with him but testified that it was "before" he was arrested. It was unclear as to which arrest he alluded. Mr. Elmore could not testify that Brian slept over each night as he did not know. He also stated that his new landlord knew of Brian's moving in with him. Luther Green, the landlord, denied that Brian lived with his father. He claimed that had he known Brian was a tenant he would have charged a higher rent; however, he was neither told, nor did he observe that Brian had moved in. He admitted that he does not pay close attention to who is on the premises. Nevertheless he made a more credible witness than Mr. Elmore who appeared uncertain and unclear as to facts. In fact, Mrs. Elmore testified that any disparity between her testimony and her husband's should be resolved in favor of her testimony and conceded that his recollection was not good. CT Page 3386
The court finds that before the April 1990 arrest Mrs. Elmore knew of her son Brian's involvement with drugs and the possibility that he sold drugs on the plaintiff's premises. Brian continued to consider the Washington Village apartment his residence, moving in and out of it at will but never finally moving from it. Brian, therefore, committed serious nuisance while a tenant on the premises.
The Court further finds that the plaintiff did not meet its burden of proof by a preponderance of the evidence as to its claim against Ryan. At the time of his brother's second and third arrests, Ryan had attained the age of 18 years. The statutory definition of "tenant" does not distinguish among classes of tenants, such as head of household. When the landlord elects to evict a tenant based upon an allegation pursuant to 47a-11 (g) the landlord's burden of proof is to show by a preponderance of evidence that each tenant failed to conduct himself and require others on the premises with his consent to conduct themselves so as not to constitute a serious nuisance. There was no evidence adduced by the plaintiff that Ryan failed to require Brian to conduct himself so as not to constitute a serious nuisance. There was no evidence presented to show that Ryan consented to Brian's presence on the premises. In fact there was testimony from Mrs. Elmore that Ryan has been hospitalized several times and diagnosed as a "schizophrenic". At home he watches television and and tears up pieces of paper. He leaves the apartment only to attend a program which teaches independent living skills. Although he knew of his brother's arrests because Mrs. Elmore told him that she had to go to court, Ryan had little or no control over his brother's activities. The brothers did not get along after the age of 14. Brian would borrow Ryan's clothes without the latter's permission when his own became dirty. The brothers fought and on some occasions Mrs. Elmore called the police. Mrs. Elmore testified that Ryan was happy to have Brian out of the house and have the "house to himself".
Without expert medical testimony, this court makes no finding as to Ryan's mental condition. However, the court finds that the plaintiff has not proven that Ryan consented to Brian's presence on the premises, or was in a position to require Brian to forego drug-selling. The court was not provided the benefit of witnessing his demeanor or hearing his testimony.
The defendant Clara Elmore raised several special defenses. The first asserted that the Notice to Quit lacks adequate specificity. The court finds that the notice specified the grounds upon which the plaintiff brought its complaint: that of a violation of section 47a-11 (g) by creating a serious nuisance by using or permitting the use of the premises for the illegal sale of drugs.
The second special defense asserts that the allegations of the CT Page 3387 complaint do not allege a cause of action. Paragraph 9 of the Amended Complaint, dated January 15, 1991, states the statutory provision that it claims Clara Elmore violated.
In her third special defense, the defendant claims that the good cause requirement for eviction from federally subsidized housing as provided by 42 U.S.C. § 1437d (l)(4) does not exist in her case. Her lease provides, in relevant part, that it not be terminated other than for "serials . . . violation of material terms . . . or for other good cause." For that proposition she urges upon the court the standard enunciated in Spence v. Gormley, 387 Mass. 258 which deals with similar statutory language and speaks of foreseeability and prevention. Mrs. Elmore may not have foreseen Brian's involvement with drugs before November 9, 1988. Subsequently, however, she had ample opportunity, especially after his arrest in August 1989. She knew he was associating with the same people as he had before his arrests. She did not contact the agencies named by Candace Mayer at their meeting after Brian's earlier arrest where she might have been able to obtain help for him. She did not take final and conclusive steps to keep him from residing in the apartment. In fact, her testimony leads the court to conclude that, on the day of Brian's last arrest in April 1990 she expected to find him at her home when she returned from work. He was not there, and she later learned he had been arrested for sale of drugs.
Mrs. Jones also claims in her fourth special defense that the landlord was mandated by section 47a-15 to provide her with written notice of non-compliance prior to instituting suit. Section 47a-15 dispenses with that requirement when the basis of the suit is "serious nuisance". As it is defined in this section it speaks of "using" the premises. There is no distinction made among the tenants between the one engaged in conduct that causes a serious nuisance, or the one who allegedly permits such conduct. The court points to section 47a-26h (c) where the statute differentiates between the actor and the other tenants. Had the legislature wished to make a similar distinction in 47a-15 it could have done so.
The court further finds that no grievance procedure exists in the case of serious nuisance and that contrary to her sixth special defense, Clara Elmore was not entitled to a grievance hearing. Plaintiff's Exhibit "E" dated September 16, 1976 sets forth the grievance procedure which Ms. Mayer testified is unchanged. Section II A states that "(I)n those jurisdictions which require that, prior to eviction, a resident be given a hearing in court containing the elements of due process . . . . the Authority excludes from this procedure any grievance concerning an eviction . . . based upon a resident's creation or maintenance of a threat to the health or safety of other residents . . . ." Ms. Mayer further testified that the Authority defines "serious nuisance" as the term is defined under the statutes. The notice to quit cites, among the reasons, "creation of a CT Page 3388 serious nuisance by using or permitting the use of the premises for the illegal sale of drugs"; and a failure to "cause other persons who are on the premises to conduct themselves in a manner . . . conducive to maintaining the project in a . . safe . . . condition." The notice to quit was the only notice given pursuant to the Authority's established policy that residents charged with serious nuisance do not qualify for the grievance procedure and that that policy was followed with regard to the instant case. Furthermore, the due process requirements called for in the grievance procedure have been provided in the instant proceeding wherein the appearing defendants received adequate notice, were represented by counsel, had an opportunity for discovery, and a full hearing on the merits.
Accordingly, the Court enters judgment for possession in favor of the plaintiff as to Brian Elmore who is defaulted for failure to appear. The court finds judgment for the plaintiff as to Clara Elmore. It finds for the defendant Ryan Elmore.
Section 47a-26h (c) provides as follows:
 . . . . no summary process execution shall be issued or enforced unless valid execution has been issued against all occupants of the premises, except that such execution may be issued and enforced, without issuing or enforcing execution against other occupants, upon a person against whom a judgment has been entered based upon that person's having conducted himself in a manner which constitutes a serious nuisance by using the premises for the illegal sale of drugs, as defined in subparagraph (D) of section 47a-15.
Accordingly, no execution may issue against Clara Elmore at this time although execution may issue against Brian Elmore.
LEHENY, JUDGE